The next case is 419-0080, Country Mutual Insurance v. Oehler's Home Care, et al. For the appellant is Barbara Snow Myrtle, D.R.C. And for the appellee, two appellees, Joseph Dunn, D.R.C., and Laura Castagna? Is that pronounced correctly? Castagna. Castagna. Harjeet. Yes, Harjeet. Castagna. And you propose to divide your presentations ten minutes each? Yes, sir. And you told the clerk this? Yes, sir. Okay. Very good. Okay. Ms. Mirdorff, you may proceed. May it please the clerk and the counsel, my name is Barbara Myrtle. I represent the plaintiff, Country Mutual Insurance Company. This is a declaratory judgment action to determine the rights and authorities of a business owner's policy issued by Country Mutual to Oehler's Home Care, Inc. with respect to litigation filed by Mr. Jeffrey Oehler against Oehler's Home Care. In this case, the pleadings and the undisputed facts establish that the injuries and damages alleged in the underlying complaint arose out of the use of an automobile or, alternatively, were caused by the rendering or failure to render a professional service. Both of those causes of loss are excluded from the coverage of a business owner's policy. The circuit court, therefore, erred in granting summary judgment to the defendants and denying summary judgment to Country Mutual and further in finding that Country Mutual owes a duty to defend the underlying complaint under the business owner's policy. To the extent the circuit court's order could be construed to include a determination that Country Mutual owes a duty to identify any judgment or settlement that might be entered in the underlying litigation, that finding is a wrong case and premature. The allegations of the underlying complaint and the deposition testimony demonstrate that the alleged injury to Mr. Oehler arose out of the use of an automobile. The phrase, use of an automobile, has an established meaning under Illinois law. That meaning is broader than simply operating the vehicle and also encompasses its employment for any purpose that's rationally connected to the purpose of providing transportation or satisfying some other related need. That's the Schultz and the Aranajan cases that were cited in the briefs. Words can't have one meaning when granting coverage and an entirely different meaning when making an exclusion, as the defendants urge here. The unambiguous words in the policy must be given a plain, ordinary, and accepted meaning, not whatever meaning is convenient to reach a particular result. Illinois courts recognize... Well, why couldn't they have two different meanings? If when you're determining coverage, you're supposed to look at it in the broadest terms possible, and when you're determining exclusions, you look at it in the narrowest terms possible. But that's only where there's an ambiguity. The case law holds that where the words used in an insurance policy have an established meaning, they are clear and unambiguous and must be applied as written. That's the Amarco Giannakis case cited by the defendants. In addition, the business owners' policy here defines use of an auto as including loading or unloading the vehicle. And again, there's an entire line of Illinois cases explaining loading and unloading the vehicle. Illinois follows the complete operations rule, which holds that loading and unloading includes the entire process of moving an article into a vehicle, as well as actions preparatory to loading. That's the Woodside, Menard, Toler, and Colter cases cited in our briefs. Here, the allegations, the complaint, and the deposition testimony make clear that the employees of the insured were loading the vehicle with Mr. Ehlers' personal property at the time of his injury in preparation to dismiss the vehicle for transportation. The underlying complaint specifically alleges that the negligent acts of the insured occurred during preparation for transport. The testimony confirms that the employees had the doors to the vehicle open, with one employee inside the vehicle arranging pillows, and the other employee physically handing a pillow in to her at the time of the injury. What about the argument that the defendants make that this could have happened anywhere, and that because the real negligence here is Mr. Ehlers wasn't strapped in to his wheelchair, and it just so happened that it happened when the employees were not paying attention at the van, but what about if they had just wheeled him out of Sands and stopped there momentarily? Well, that's not, those aren't the allegations of the complaint, and we have to use the allegations of the complaint to determine coverage. And further, the complaint, there's no allegation about the failure to use a safety belt appears in the underlying complaint. The only allegation is that the employees failed to properly restrain Mr. Ehlers without identifying what proper restraint would be in his particular circumstances. The testimony of the witness is that the employees did not use that safety belt on that wheelchair at any time, not just at the moment of this accident, but they made a conscious decision not to use it, because doing so would send him into a rage or get him agitated. The safety belt was uncomfortable for him, and it would actually hurt him. So based on the witness' testimony, use of the wheelchair equipped safety belt would not have been a proper restraint for Mr. Ehlers' particular case, and that conscious decision not to use it in light of Mr. Ehlers' specific circumstances is, I think, a clear example of the application of the specialized knowledge or experience or exercise of professional judgment that would trigger the application of professional services exclusion, which we also contend is the basis for denial of courage in this case. You asserted two different bases, the professional services and the automobile exclusion, did you not? Yes. If we were to agree with either of those, would that be adequate to reverse the trial court? We don't have to address both, do we? Yes, if the court finds that the allegations in the complaint fall within either exclusion, there is no coverage. You also indicate you're appealing the denial of your motion for summary judgment. That's kind of procedurally estranged business, is it not? It is, but it's possible in this case because there were cross motions for summary judgment, and the summary judgment was granted to the defendant. Well, in other words, if both motions had been denied, the denial of your motion would not be appealable, would it? That is true. We would not be here today if both motions were denied. In the event we were to agree with either of your arguments, what should we do? Well, if you agree that either one of the exclusions precludes coverage for the complaint, then summary judgment for the defendant should be reversed, and summary judgment would be granted for country mutual on the issue of the duty to defend. Well, that's assuming, again, we're going to be granting the appellate court in the business of overruling, reversing trial court's denials of summary judgment. We're here on de novo review, so there would be nothing for the trial court to reconsider or do differently if you were to reverse. So I think in that sense, a grand judgment for country mutual would be appropriate. What would stop the trial court from looking at this anew in light of this court's ruling? There could be something in our ruling that the court could glean or learn that may change the court's position. Why couldn't they take up the competing motions anew? I guess I'm not able to foresee what would come out of this court's ruling that would— Well, if we agreed with you and just reversed the method of further proceedings, and it's now back to the trial court, what are you going to do? Well, then I suppose the court would have to look at the guidance provided in this court's opinion and then— This is a real technical point. I'm sorry to be taking up your time on it, but it's one of the things that we need to think about. The idea of the auto-exclusion, loading and unloading, and what you call the complete transaction? Complete operation. The complete operation. Doesn't the additional definition within the policy about reference to property make that somewhat problematic? In other words, given the country mutual, this makes reference to loading and unloading property. Jeffrey isn't property. Certainly not. And we've never argued that he is. Well, okay. Pillows. Right. So it's the pillows? Right. His personal property that allows him to be transported safely and comfortably in the van. Is there any dispute that some of the pillows were already inside the van? No, there's not. One was—I just gave a testimony of the two employees who were there. One pillow was in—one employee was inside arranging that pillow, and another employee was handing a second pillow into the van. I know insurance companies pay a lot of attention to this language. I'm just curious as to why they would refer to property. I guess no one foresees the issue of loading and unloading a person. And I'm surprised they didn't say property or anything. Right. I think that my recollection is that there is case law about aligning to and from a vehicle that would cover people, so that really it's only the property that needs to be transported. Well, but it's your policy, and the policy speaks of property, and there might be a claim that, well, that's to the exclusion of anything that's not property, like a person. That could be argued. In fact, they do. So I'm just curious as to the source of where—why the insurance company would put a limitation upon— what sounds like limiting language in their own policy. Well, but that's only with respect to the specific area of property. Use of an automobile is a term that has clear meaning under Illinois law, and that is broad enough to cover situations with people, as you're pointing out. So I suppose it's a question of how far back do you go. In one sense, it sounds like the use of an automobile. That's what's going on here. They're getting them, loading and unloading, or loading them in. But on the other hand, if the claim is they were negligent in letting him fall and injure himself, that, for lack of a better way to put it, that was an accident waiting to happen anywhere this entire day if he was not sufficiently restrained, whether they were in Sam's Club or coming in or going out or wherever they happened to be. So the contention is it just so happened that the accident, in fact, occurred at the situs of the van as opposed to any sort of causal connection. What about that? Well, the phrase arising out of the use of a vehicle is broader than a strict causal connection. The definition of arising out of means originating from, incident to, or having a causal connection with the ownership, maintenance, or use of a vehicle. And that's from the Oranjec case that we cited, too. So it's broader than a strict approximate cause. The question is, is the activity reasonably consistent with the inherent nature of the vehicle we're providing transportation? And here it was. They were engaged in loading the vehicle and, in the process of doing so, turned it back on their patient and allowed him to fall out of his wheelchair. So I guess the claim is if they weren't in the process of unloading the vehicle, maybe they would have been more attentive or not had their attention distracted or something? I believe that's the theory under the complaint. In the event this Court were to conclude that the automobile exclusion applies, is there any exception to that exclusion? I want to make sure that I understand what your contention is and what the defendant's contention is. Is there some aspect of this that would say even if the auto exclusion applies, the country manager still loses because? No, not that I have been able to obtain from the policy. The insurance policy before this Court is a business-owned policy. It's not an auto liability policy. And its purpose is to cover the risks of operating a business, not the risks associated with operating and using automobiles. As a court in the Oakley Transport case explained, the risk of using automobiles is addressed by a separate specialized class of insurance. The two types of coverage are designed to be complementary, not duplicative. The injury in this case is excluded from the coverage of the business owners policy because it did arise out of use. Well, just as a matter of economics, this isn't my specialty, but is my understanding correct that business owner policies are rather less expensive to the insured than automobile? I apologize, that's not within my area of expertise. Okay, well, I'm just wondering if this is what's, well, maybe counsel can answer that. Go ahead. In the alternative, if the allegations of the underlying complaint also fall within the professional services exclusion of the business owners policy, the Illinois Appellate Court has held that professional services exclusion applies to any business activity that requires specialized knowledge, labor, or skill, and is mental or intellectual in nature as opposed to simply manual or physical. That's the Hill-Foy and Keekman Assurance v. L.J. Shaw cases. While the exclusion is not so broad as to exclude every allegation of negligence that could be made against a professional, the courts recognize that the professional services exclusion also cannot be read so narrowly as to transform a general business liability policy into a professional errors and omissions policy. The focus, instead, remains on whether the plaintiff is seeking to impose liability for acts which were taken in the course of providing professional services and which drew upon, or at least should have drawn upon, the professional's training, skill, experience, or knowledge. The allegations of the underlying complaint and the deposition testimony make clear that that's the case here. The complaint alleges that Mr. Ehler was in the care of the insurer, that he was their patient, and that he relied upon the insurer for his care. The specific allegations of negligence are that the insurer failed to properly manage Mr. Ehler, failed to properly restrain him, and failed to properly care for him at the time of his injury. As the testimony of the witnesses make clear, all of those activities involve specialized knowledge, labor, or skill, particularly when applied to a person with a combination of severe disabilities that Mr. Ehler had suffered, which made his care exceptionally difficult. Providing assistance and care to Mr. Ehler, based on the testimony of Charleston Bath, was that it required continually reassessing the situation to make sure that it was safe to continue any activity with him. That need for a constant reassessment and exercise of professional judgment... And she's the one who was handing the pillow in. Correct. She was not a CNA. She was not. She had actually no home health care training prior to this at all. She had training provided to her, on-the-job training provided by Shelley Ehler and the other employees of Ehler's Home Care Aid. The testimony was that no person would be allowed to participate in Mr. Ehler's care until they had undergone that training provided by Mrs. Ehler herself, and her employees could already have trained in the methods used to care for Mr. Ehler. She didn't involve any sort of medical treatment or... Well, the activities that were being conducted at the time of the injury did not involve medical treatment, correct? But there were medical services that were provided by the employees of Ehler's Home Care to Mr. Ehler. Each of the cases cited by the defendants for non-application of professional services exclusion are distinguishable because the injury-causing conduct in those cases required no specialized training, knowledge, or skill. Defendants assert that the business owner's policy is lusory and would never be triggered if the professional services exclusion was given effect due to the inherent nature of the insurance business. That's not the case. Here, the business owner's policy provided numerous property coverages and liability coverages to Ehler's Home Care. Liability portion of the policy provides coverage for sums that the insurer becomes liable to pay because of bodily injury, property damage, or personal and advertising injury. The fact that the particular allegations of the underlying complaint assert a bodily injury that was caused by the rendering or failure to render a professional service doesn't mean that every conceivable form of liability that could be alleged against the insurer would be excluded from coverage in the policy. The policy provides coverage for premises liability, defamation, privacy towards copyright infringement, just to name a few. The business owner's policy simply is not a professional errors or omissions policy and the particular allegations of this complaint fall within that exclusion. I see my time is running short. It is based on the trial court error in granting summary judgment to defendants and denying summary judgment to company mutual. Either or both of the auto exclusion and professional services exclusion precludes coverage for the claims made in the underlying complaint and having mutual reply to those portions of the summary judgment order pertaining to the counts of the previous case and the judgment made in the paper. Thank you, counsel. You'll have an opportunity to address this again in rebuttal. Okay, who will be going first? You will, Mr. Dunn? Yes, sir. You may proceed. May I please report? Counsel. Counsel. Your honors, I'm going to be addressing the automobile exclusion. My co-counsel, Mr. Stagnant, is going to talk about the other issues involved. I guess, as the employee, it's probably easier if I just jump into why the cases cited by counsel for the loading and unloading are not applicable to this situation. Every one of those cases, the accident happened because of whatever it was they were loading or unloading. The Menards case, where things get screwed about and people fall on it, those sorts of things. These pillows had nothing to do with this accident. Counsel said, we've never really alleged that he was property, but I don't remember hearing the word pillows until the appellate court. I think, certainly the insinuation was we were loading him. We were in the process of loading him. Now, to expand that to say, well, we were loading pillows, and of course, we have the complete operations doctrine in Illinois, so that means anything that happens as a result of loading pillows is part and parcel of loading and unloading. Well, that would be, I don't want to say crazy, but that would be quite a stretch to say that this loading operation had anything to do with this. Well, is it the fact that they were in the process of loading Jeffrey into the van? Isn't that the use of the car? If you'd fallen out of the van. They worked in the process of loading him into the van. They opened the doors, they're shutting it up, they're doing everything to get him into the van, except this moment before, they're lifting him to put him in the van. Which is, in my view, that's what loading him into the van was. So that's the only, none of the other steps right there matter? I don't think they matter in terms of the loading and unloading cases that have been cited. I just want to look at it as a matter of the English language. I mean, if someone were looking at what they were doing, they wheeled him up to the van, opened the doors, they're situating pillows inside, say, what's going on there? Much like they're loading him into the van. Or preparing to load him into the van. Maybe that would be further qualification. Why isn't this a matter within the auto exclusion? I think it would be preparing to load him into the van, which is an expansion of the loading and unloading. Well, it's, why isn't this, why isn't the activity pertaining to what they were doing when this accident occurred come within the whole idea of the use of the van? And maybe that could have been cured or still could be cured with a more artfully drafted complaint. The allegations of negligence, in this case, are that they didn't strap him into the seat. Except that allegation doesn't appear anywhere. Is that right? There's a very broad... Well, before you get to that, isn't that a correct statement? The word straps never used. Yeah, that what you just said, that allegation doesn't appear anywhere. Well, restraining is used. Again, it could be more artfully drafted. Okay, go ahead. But certainly, if you're looking at this complaint and the facts that we know, based upon what is alleged or what could be alleged, it falls outside of the exclusion for loading and unloading. Why? Because there's nothing that they did in that procedure that we're alleging was negligent. So my understanding is your argument is that opposing position, best case scenario, is that they were preparing to begin the process of loading and unloading. Am I restating your argument correctly? Well, they had loaded two pillows. They hadn't loaded... Taking them from the wheelchair. Yes. They were preparing to begin the act of loading and unloading this individual. Yes. Am I right? I think I could disagree with that. They did everything but lift them up into the car, everything preparatory to that. Isn't that right? Yes. Including the pillows from his wheelchair that he needed to have situated in the car. Absolutely. So... Since we keep going back to the wording of the complaint, maybe if you had just said that he was sitting unattended... No, that's absolutely right. ...while the attendants were busy with other activities and he fell out... I don't even think it would need to go that far. Well, but tying it into the van seems to be the issue, right? Or not tying it into the van. I mean, he could have fallen in the sand slot. He was never strapped in. It's just... But in the language of the complaint, you tied it to preparing the transport. Yes. And that was... That's absolutely right. It's tied in here in preparation for transport. And I think that that was superfluous and just, in my view, could be cured by an amendment to the complaint. Well, here we're at the appellate court level. I mean, you know, if you're going to amend the complaint, isn't that something you do before or in response to the motion for summary judgment that everyone's filed here? Should we understand your argument to be an oral motion to amend the complaint now? No. I think that the allegations in the complaint, as alleged, show that not all of the allegations of negligence, maybe one, fall within this exception, but certainly not all of them. This is a declaratory judgment action, and the court properly ruled that they haven't shown, with the facts that we claim in the complaint, that there's no coverage here. Sort of, is your position the court hasn't made a ruling as to whether or not there was a transfer of the individual into the van, or whether or not they were in the process of preparing for the transfer? Does that make sense? So there's a distinction that I keep going back to, and that is, they're putting the pillows in so they're preparing to then begin the process of transfer. It's different from the pillows being a part of the transferring of the individual into the van. Yes. And so your argument, as I hear it, is that the complaint allowed for this distinction, and that your alleging the negligence occurred prior to the actual transfer process. Yes. And for that reason, the summary judgment was proper under these circumstances. In other words, if the one attendant, the CNA, had said, hey, we're getting ready to go, why don't you run ahead and put these pillows in the van, I'm going to get him situated here in the store, and she went in, put the pillows in the van, and he fell out of the wheelchair, same situation. We were no closer to him being loaded into the van. In that case, as we were in this case, the pillows had been put in the van, the doors had been opened. There was not a lot of things to do to load him into the van that overshadowed the physically loading him into the van. That's kind of the big kahuna, obviously. Putting the two pillows in there had nothing to do with this. The question is, does the auto exclusion provision, use of a vehicle, include loading and unloading, and is this envisioned, are we seeing loading and unloading in this case, particularly under the complete operations doctrine to which you made reference? Maybe, as I mentioned to Ms. Mirbo, if he had fallen in the store, we wouldn't be here talking about this, but he didn't. It looks to me, based on what everyone has said on the depositions, it's not the same thing at all. It was because these people were in the process, and distracted by the process of loading the van, that's whether it was a factor, perhaps a major factor, in why the accident occurred at all. Maybe, but we're into the negligence action now. Your time is up, counsel. Thank you. Ms. Costagna, did I pronounce that correctly, Harjit? Costagna. May I please report? Counsel. I represent the estate of Jeffrey Ehler in this litigation. I plan to focus our argument here today with regard to the professional services exclusion, but I'm also willing to answer any questions you may have about the auto exclusion as well. Counsel, first country, and I both agree as to the definition of a professional service, which is a business activity that is conducted by an insurer that involves specialized knowledge, labor, skill, and is predominantly mental or intellectual, as opposed to disciplinary and legal. However, the mere commission of negligence by a professional is insufficient alone to find the exclusion of liabilities. Now, the focus must be whether the claimant seeks to impose liabilities for acts which were taken in the course of providing services and drew upon, or at least shouldn't have drawn upon, the professional's training, skill, experience, and knowledge. So in this case, country has cited certain facts in their brief to establish that this is a professional service. For example, they have stated, on the complaint, plaintiff has alleged that Mr. Ehler was in the care of Ehler's Home Care, and Mr. Ehler was a patient of Ehler's Home Care. At the time of this injury, it was the duty of Ehler's Home Care to provide services for him. My problem, my quarrel with countries that cited those facts is that they're looking at this broadly, and the court needs to look at what was the specific act that caused this injury. So in this case, the two fact witnesses have been deposed and have provided testimony, but at no point was Mr. Ehler secured in the wheelchair during this trip to San Francisco.  Apparently, if I understand the record correctly, at no point was he secured in the wheelchair with the strap ever. That's what they, very self-serving testimony, I understand. Well, is the self-serving, is that helpful? I mean, is there any dispute to that testimony, any reason to disbelieve it? I don't believe there's any, other than using common knowledge. I couldn't hear what you said. Other than using what? Common, just common sense to say that, I mean, the person that they're caring for is a spastic quadriplegic. With that condition, that means that he has no use of, meaningful use of his arms and legs. Well, it sounds like you're disagreeing with their assessment that it wasn't necessary to strap him in. Are you claiming that they were just lying when they said they never strapped him in? These are two different things, I think. Yes, they are two different things. What I'm saying is that, although they have stated that they didn't need to strap him in, they tried to say that, you know, they constantly need to reassess whether it was appropriate to move forward with providing care with him, that it was uncomfortable for him to have his safety belt on him at any time. But the fact remains, like, the fact remains that he was not melted in. And as a result, neither one was paying attention to him, and he fell forward out of his chair. So, you know, back to the test that Illinois courts and courts from other jurisdictions have looked at, they look at what was the cause of this specific injury. Does that require specialized knowledge, training, skill, and experience? And it's our contention that it does not require specialized knowledge, training, skill, or experience to know that when you are caring for someone who is spasmodic, quadriplegic, who is wheelchair-bound, you need to have them strapped in appropriately in that wheelchair. Now, we have cited one case from the Fifth District. It's a Keeps case, which demonstrates that just based upon the person's disability does not mean that everything that is done for them is a professional service. So in this Keeps case, it was a disabled child who was both physically and intellectually disabled, was left on the floor unintended by, it was a CNA in that case, and rolled into a radiator and suffered severe burns. In that case, the court explained that that was not failure to render professional services. The reasoning that they gave was that this CNA was not doing anything that wouldn't be done in a normal home. So, again, we are arguing that, like the Keeps case, in our case, fascinating of a safety bill is an ordinary task, that it could be performed or achievable by those lacking the relevant professional training and experience and do not require specialized knowledge. We have also cited persuasive authority from other states. That makes clear that, again, not everything that is done by professionals triggers this exclusion. So a couple of cases which I think are helpful to guide this court. There was a case out of Massachusetts where an ambulance company was, there was a delay in responding to a medical emergency due to a miscommunication regarding the emergency location. They found that that was not, that did not constitute professional services. There's also a case from North Carolina where it was an issue of the negligent failure to lock casters on a dialysis chair was found not to be within the scope of the professional services exclusion. There's another case from Louisiana where they found that the nurses missed countless sponges is not a matter that falls within the professional services exclusion. And another case that talks about the failure to raise the hospital bed rails resulting in an injury was not a professional service. So, again, we think that this case along with the, those cases along with the case case are important to guide the court's decision here today in that none of the services performed by the ailer's home care rises to the level of professional services. So in this case we have one... Is it a matter where in part they have to have specific credentials before this would apply? I don't think, no. The case law says just because you require certain professional credentials doesn't mean everything you do is automatically professional services or otherwise. So, I was about to point out that we do have one employee who is a certified nursing assistant and the other employee at the time was in the process of obtaining her certified nursing assistant. However, the scope of her duties were, she was called out safe, essentially. None of the services that the certified nursing assistant rendered at the time of this injury would rise to the level of specialized knowledge care or skill. Because, again, the issue that caused this, the problem that caused this injury was a failure to fasten a stirrup tailor in his wheelchair at the time of it, causing this injury, which is not an act that requires exercise of a particular skill or discretion acquired upon, developed, or discretion acquired or developed by any type of specialized training. It was an act that could have been done by any unskilled or untrained employee and did not involve the exercise of professional judgment. So, basically, again, we're asking that the court look at the act that caused the injury as opposed to the actor. And if this court doesn't have any other questions... I don't see any. Thank you, counsel. Ms. Murdo? By the way, is that pronounced correctly? Murdo? Murdo, yes. Okay. Thank you. Thank you. You have to go by what the complaint actually alleges to determine whether coverage exists in this case, not what could have been alleged or what should have been alleged. The complaint alleges both use of an automobile, as that term is defined in the Illinois case law, and alleges that the injury occurred because of a failure to monitor, restrain, and care for Mr. Aylor, which falls within the professional services decision. The testimony wasn't that the employees of Aylor's Health Care didn't need to strap him in, but that strapping him in was actually counterproductive under this particular circumstance. What was required for Mr. Aylor was constant attendance and monitoring. And that was the failure here, as alleged in the Illinois complaint. The Keats case that counsel decided to is distinguishable. The allegations there were that the residential care center employee failed to supervise and control the minor, placed the minor in a position of danger, failed to provide care and attention to the minor, and delayed in obtaining medical treatment after the injury had occurred. Here, the allegations against Aylor's Home Care make specific reference to the duty owed to Mr. Aylor as a patient of the insured, about his dependence upon the care of the insured due to his medical condition. In contrast to the testimony in Keats, the testimony in this case is that the employees in question were a certified nursing assistant who had been licensed since 1997, and an aide who was attending the school to become a CNA at the time of the injury. In Keats, the court described the employee in question as an aide. The specific services being performed for Mr. Aylor at the time of his injury, assistance with activities of daily living in light of his severe physical and emotional disabilities, are services that require specialized training and knowledge, and are within the specific job description and training program for a licensed CNA. It could not be performed without formal training or prior experience in providing home health care due to the unusualness of Mr. Aylor's condition. Those services required constant reassessment of the situation to determine whether it was safe to continue activities with him. So Keats is readily distinguishable and not determined in this case. Okay. Thank you, counsel. We'll thank Ms. Mander and advise you to be in recess for a few moments.